# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RENE M. SHAMPO,

                          Plaintiff,                    Case No. 16-CV-1278-JPS

v.

WINDSTREAM
COMMUNICATIONS, LLC,                                    **ORDER**

                          Defendant.

Plaintiff Rene M. Shampo ("Shampo") filed this action against her former employer, complaining of sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964. *See* (Docket #1). On May 1, 2017, Defendant Windstream Communications, LLC ("Windstream") filed a motion for summary judgment as to all of Shampo's claims. (Docket #15). Shampo did not oppose the motion in any fashion. For the reasons stated below, it will be granted.

## 1.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most

favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2.    RELEVANT FACTS

### 2.1    Plaintiff's Failure to Dispute the Material Facts

The relevant facts are undisputed because Shampo filed absolutely nothing in response to Windstream's motion for summary judgment. Pursuant Civil Local Rule 56, her deadline to do so was May 31, 2017. *See* Civ. L. R. 56(b). That Rule warns that "[t]he Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." *Id.* 56(b)(4). Similarly, Federal Rule of Civil Procedure 56 provides that a party seeking to dispute an asserted fact must cite to specific materials in the record which support such a dispute. Fed. R. Civ. P. 56(c). If the party fails to do so, the Rule permits the court to deem the fact undisputed. *Id.* 56(e)(2).

These rules provide for the orderly disposition of cases "by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). They are not "hyper-technical" and they do not turn litigation into a game of skill. *Id.* Instead, they provide "plain instructions" designed to "assist the court by organizing the evidence, identifying undisputed facts, and. . .imposing some discipline on the pretrial process." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999).

In reviewing applications of a district court's local summary judgment rules, the Seventh Circuit has "repeatedly held that requiring strict compliance with [such rules] is not an abuse of the district court's discretion." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 671–72 (7th Cir. 2006). Indeed, even in cases brought by *pro se* plaintiffs, in which the Court must liberally construe the plaintiff's filings, the Court is entitled to strictly enforce the rules regarding summary judgment procedure. *See Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006). For a party represented by counsel, enforcement of these rules goes without saying.

Shampo and her counsel totally ignored the summary judgment rules. The Court need not and will not take on the mantle of resisting Windstream's motion on her behalf. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Consequently, the Court deems admitted each of Windstream's statements of material fact. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); (Docket #17) (Windstream's statement of material facts).

### 2.2 Facts Material to the Disposition of Defendant's Motion

Because Shampo has failed to dispute Windstream's proffered facts, the Court will summarize only those facts necessary to the disposition of Windstream's motion, viewing them in the light most favorable to Shampo.

Shampo was employed by Windstream as an Account Manager 2/Senior Account Manager for just over two years, starting in August 2012. In this capacity, she generally performed sales and customer service work. She worked at the company's Brookfield, Wisconsin location. When she

started at Windstream, she was provided a copy of the company's employee handbook, which requires employees to report sexual harassment to Human Resources or the employee's immediate supervisor.

Her employment with Windstream had a difficult start, as Shampo did not always see eye-to-eye with her supervisor, Diane Shelton ("Shelton"). Shelton cited Shampo for misconduct on numerous occasions, including counseling Shampo after engaging in unprofessional conduct with a customer and issuing Shampo a written warning for insubordinate and disrespectful behavior. Shampo thought that Shelton was intentionally misrepresenting her performance and was setting her up to fail, but did not believe that Shelton's conduct was discriminatory.

Approximately one year after Shampo joined Windstream, in August 2013, Brad Lawrenz ("Lawrenz") became her supervisor. Initially, Lawrenz thought Shampo was a strong performer and a hard worker. Lawrenz completed an informal review of Shampo a few months after he became her supervisor, and it was favorable. In doing so, he elected not to use or review a previous, critical review of Shampo that had been completed by Shelton because he believed Shampo deserved a fresh start. During that time, he also met with Aaron Hepburn ("Hepburn"), the Company's Vice President of Account Management, to advocate on Shampo's behalf, discuss ways in which Windstream could help Shampo succeed, and secure a raise for Shampo.

Over time, however, Shampo's relationship with Lawrenz worsened. In April 2014, she received the lowest score on her performance review of any of the nine employees—four male and five female—who reported to Lawrenz. She received an "Improvement Needed" rating in four out of the six categories considered. Although she received a high

rating in one category, Productivity Results, that category was the least important, counting only towards ten percent of the overall rating.

After that, Shampo's performance continued to deteriorate. It became evidence to Lawrenz that Shampo could not meet her sales goals, as she was utilizing sales employees to help meet her sales numbers and providing those employees a percentage of her commissions. At times, Lawrenz would chastise Shampo in front to of her coworkers. For instance, on one occasion Shampo was the only employee at a meeting to have included inaccurate information in a report she prepared. Lawrenz reprimanded her during the meeting for her error.

Additionally, during her supervision by Lawrenz, Shampo raised concerns about her computer, which was running different software than that used by other Windstream employees at the Brookfield location. She never received a new computer although she had requested one and Lawrenz had allegedly promised to put her on the list for one. She felt like this was another episode in the company setting her up to fail. However, Lawrenz avers that while he was sympathetic to Shampo's request for a new computer, he had no authority to address the matter other than refer the request to the company IT department. Moreover, Shampo was not alone in her complaints, since all Brookfield employees at times experienced technological issues.

In August 2014, Lawrenz chose Shampo's co-worker, Andrew Gerlach ("Gerlach"), to transfer to the Green Bay, Wisconsin office instead of Shampo. Lawrenz chose Gerlach because he was a stronger performer, had a larger customer base in Green Bay, and maintained his primary residence in Green Bay. Shampo was not happy with the decision and

speculated that the decision was made because she was single, unlike Gerlach, who was married.

In October 2014, Windstream selected 271 positions for elimination as part of a company-wide reduction in force. Hepburn made the decision to eliminate Shampo's position as part of that reduction in force on October 29, 2014, to be effective on November 20, 2014. His reasons for selecting Shampo—namely, the fact that she had received the lowest rating during the most recent performance review of any employee on her team and because her production was in the bottom half of her team, despite having longer tenure than most of her coworkers—were outlined in a Business Case Memorandum that was prepared on October 29, 2014. Hepburn did not consult with Lawrenz in making his decision.

Hepburn's decision was approved and finalized the next day, October 30, 2014, and Shampo was informed of the decision the day it became effective, November 20, 2014. On October 31, 2014, Shampo, for the first time, complained of sexual harassment by a coworker in an email that she sent to Charity Noe ("Noe"), a Human Resources employee. Shampo complained about instances of sexual harassment by a coworker, John Wagner ("Wagner"), mostly around the start of her employment at Windstream.

Wagner worked in a different department and at the Madison, Wisconsin office. His alleged misconduct included crude comments he periodically made to Shampo, but she admitted to Noe that such commentary had stopped occurring more than six months prior, in April 2014. Additionally, there was one incident of physical contact between Wagner and Shampo that had occurred in April 2014 before Shampo and

the coworker went out to lunch. Finally, Shampo claimed Wagner made a crude gesture at her three weeks before Shampo sent the email to Noe.

In her email, Shampo acknowledged that she should have raised her complaints sooner, given she was complaining about conduct that had ended more than six months prior, writing that "I am ashamed that I haven't brought this to your attention sooner. I felt it best to resolve the situation by staying away from Wagner and to make sure I was never alone with him." (Docket #18-10 at 1). Shampo also wrote in her email that she simply wanted to "report a few incidents" and that she wanted the information "put on the record, nothing more." *Id.* Nevertheless, Noe immediately launched an investigation into Shampo's allegations, contacting Shampo that day and interviewing five other employees over the next two days. All of the interviewees indicated that they had never witnessed any of Shampo's allegations, and Noe was thus unable to substantiate any of the allegations. This was the only time Shampo ever complained to any supervisor or Human Resources employee about any harassment or discrimination.

3.    DISCUSSION

On the undisputed facts in the record, Plaintiff's claims for sex discrimination and retaliation fail as a matter of law. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of that person's sex. 42 U.S.C. § 2000e–2(a)(1). It also prohibits any employer from retaliating against an employee because the employee has engaged in protected activity, including complaining about discrimination or harassment based on the categories enumerated in Title VII. *Id.* §§ 2000e-3(a), 12203(a). A *prima facie* case of discrimination or retaliation in the employment context generally requires (1) that the

employee suffered an adverse employment action and (2) that the action was motivated by discriminatory or retaliatory animus. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169–70 (7th Cir. 1998).[1]

For her retaliation claim, Shampo must prove the retaliatory animus was the but-for cause of the adverse employment action, not merely a motivating factor. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). For the sex discrimination claim, however, showing that discrimination motivated Windstream's action to some degree is sufficient. *See id.* at 2526; 42 U.S.C. § 2000e-2(m). For either species of claim, under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), Windstream may offer legitimate, non-discriminatory reasons for the adverse employment action it took, which Shampo must then rebut by showing that they are mere pretext, *Argyropoulos*, 539 F.3d at 736; *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

In the past, courts employed relatively rigid frameworks—seeking either "direct" or "indirect" kinds of proof—to discern whether impermissible motivations underlay the employer's action. The Seventh Circuit jettisoned that paradigm in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The inquiry has returned to its roots: namely, whether, considering all the available evidence, a reasonable juror could conclude that the adverse employment action the plaintiff suffered would

---

[1]A retaliation claim also requires that the plaintiff engage in some statutorily protected activity which the employer then retaliates against her for. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). For present purposes, the Court will assume the October 31, 2014 email constitutes protected activity, since the retaliation claim can be disposed of on other grounds.

not have occurred in the absence of the plaintiff's protected status. *Id.* at 763–64; *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

Shampo's sex discrimination claims fails because none of the actions she challenges as discriminatory were connected to her gender. Her complaint raises a litany of conduct she considered discriminatory, but the evidence submitted by Windstream substantiates only the following: (1) not being provided a newer computer despite several requests for the same; (2) Lawrenz chastising her in front of her coworkers; and (3) Gerlach getting selected for the Green Bay transfer over her. *See* (Docket #17).

Shampo's allegations in her complaint that these actions were premised even in part on her gender is no substitute for actual evidence of the same. *See Anderson*, 477 U.S. at 248 (holding that in response to summary judgment, a party "'may not rest upon the mere allegations or denials of his pleading, but. . .must set forth specific facts showing that there is a genuine issue for trial'") (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Despite the liberal, totality-of-the-circumstances approach endorsed in *Ortiz*, there are simply no facts linking any of this conduct to discriminatory animus. First, Shampo's computer-related difficulties, while lamentable, could not be remedied by Lawrenz and were not his attempt to hamstring her ability to work. He did not have the authority to obtain a new computer for her, and other employees had to deal with similar technological challenges. Second, to the extent Shampo was reprimanded, Windstream has shown that she was the worst performer on Lawrenz's team and made mistakes when no one else on the team did, things which easily warrant reprimand. Finally, Gerlach's transfer to Green Bay was not motivated by Shampo's gender, but by the fact that Gerlach lived there, had a larger customer base there, and was a better performer than her.

By disregarding the present motion, Shampo chose not to challenge Windstream's justifications for the actions it took. In so doing, she has failed to carry her burden to show that these reasons are mere pretext masking discrimination. *Argyropoulos*, 539 F.3d at 736 (holding that courts "do not sit as a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions'") (quoting *Culver v. Gorman*, 416 F.3d 540, 547 (7th Cir. 2005)); *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 839 (7th Cir. 2009) (finding that pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action"). As a result, this claim must be dismissed.

Shampo's retaliation claim likewise fails because she cannot establish the requisite causal relationship between her protected activity—the October 31, 2014 email—and her ultimate discharge. First, Hepburn's decision to terminate her was made a few days before Shampo sent the email, indicating that the termination was not motivated by any topic raised in the email. *See Nelson v. Potter*, No. 05 C 3670, 2007 WL 1052490, at *11 (N.D. Ill. Apr. 2, 2007). In fact, the record reveals that this was the first anyone at Windstream had heard of Shampo's allegations against Wagner. Thus, there was no way for Hepburn to know about Shampo's harassment concerns prior to her October 31 email.

Second, Hepburn terminated Shampo as part of a company-wide reduction in force which affect 270 other employees in addition to Shampo. This too suggests that Windstream was not taking action in light of Shampo's email. Finally, as Windstream points out, Shampo's inclusion in the reduction in force was for entirely legitimate reasons, since she was the weakest performer on Lawrenz's team. Again, because Shampo did not oppose Windstream's motion, its proffered non-retaliatory reasons for

firing her stand unrebutted. *Argyropoulos*, 539 F.3d at 736. As a result, the undisputed facts preclude a finding that retaliatory animus was a but-for cause of Shampo's termination. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (holding that if the plaintiff still would have been fired absent any complaints, the "alleged retaliatory motive, even if unchallenged, was not the 'but for' cause of [the plaintiff's] harm"). Thus, this claim too must be dismissed.[2]

## 4. CONCLUSION

Shampo and her counsel, by ignoring Windstream's motion for summary judgment and the rules of this Court, essentially forfeited her

---

[2]In its motion, Windstream argues that Shampo's "sexual harassment" claim, based on her interactions with Wagner, should also be dismissed. (Docket #16 at 6–16). The Court need not tarry long on this argument, however, since Shampo's complaint does not raise any claim of sexual harassment despite including detailed allegations about Wagner's untoward conduct. *See* (Docket #1). Whether or not discovery revealed that she could have asserted such a claim, Shampo never sought to amend her complaint to add this distinct type of Title VII claim. The Court will not *sua sponte* amend her complaint, especially in light of her failure to participate in the summary judgment process.

Moreover, even had this claim been raised, it would fail. On the undisputed facts before the Court, it is plain that Windstream had reasonable policies in place to prevent sexual harassment. *Doe v. Oberweis Dairy*, 456 F.3d 704, 716 (7th Cir. 2006) (Title VII sexual harassment claim against non-supervisory co-worker is only actionable where the employer "failed to have and enforce a reasonable policy for preventing harassment, or in short only if it was negligent in failing to protect the plaintiff from predatory coworkers"). It is equally clear that Shampo did not promptly avail herself of the protections of those policies, waiting until her October 31, 2014 email to make her first and only report. *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812–13 (7th Cir. 1999) (employee must not unreasonably fail to take advantage of employer's preventative or corrective opportunities to avoid harm). Finally, once reported, Windstream vigorously investigated—and found unsubstantiated—Shampo's allegations against Wagner. *Doe*, 456 F.3d at 717 (observing that an employer can be negligent in either discovering or failing to remedy alleged harassment). Thus, Shampo's sexual harassment claim would, if raised, be subject to dismissal.

claims. On the undisputed facts in the record, each claim undoubtedly fails as a matter of law. As such, the case must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant Windstream Communications, LLC's motion for summary judgment (Docket #15) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of June, 2017.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Court